# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

Case No. 25-1050

In Re: RENO CITY CENTER OWNER, LLC
*Debtor* (Chapter 11)

CHRISTOPHER BEAVOR, ET AL.,
*Appellants,*

v.

RENO CITY CENTER OWNER, LLC, ET AL.,
*Appellee.*

ON APPEAL FROM
THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA
Case No. 24-50152-hlb
The Honorable Hilary L. Barnes, United States Bankruptcy Judge

## APPELLANTS' REPLY TO BRIEF OF APPELLEE RENO CITY CENTER OWNER, LLC

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
Brian L. Davidoff (SBN 102654) (BDavidoff@ggfirm.com)
Cole F. Nicholas (SBN 354027) (CNicholas@ggfirm.com)
2049 Century Park East, Suite 2600
Los Angeles, California 90067-4590
Telephone: (310) 553.3610 / Facsimile: (310) 553-0687

Attorneys for Appellants
CHRISTOPHER BEAVOR, ET AL

# TABLE OF CONTENTS

**Page**

I.    STANDARD OF REVIEW ............................................................1

II.   ARGUMENT .........................................................................2

     A.     Appellants Have Standing to Appeal the Dismissal Order ................2

           a)     Appellants Have Article III Standing .......................................2

           b)     Appellants Can Prove Prudential "Person Aggrieved" Standing ................................................................5

     B.     The Dismissal Order Violates Jevic. ....................................6

           a)     Payments to Other Favored Unsecured Creditors ...................6

           b)     The Dismissal Order Favored Equity Over Creditors. ............13

III.   CONCLUSION......................................................................15

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. BANKR. P. 8015(H)................................................................................17

CERTIFICATE OF SERVICE .............................................................18

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bank of America Nat'l Trust & Sav. Ass'n v. 203 North LaSalle Street Partnership,*
526 U.S. 434 (1999) ............................................................. 15

*Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.),*
66 F.4th 1214 (9th Cir. 2023) ................................................ 2

*Czyzewski v. Jevic Holdings Corp.,*
137 S. Ct. 973 (2017) ................................................. passim

*In re Blades Board & Skate LLC,*
Case No. 03-48818 (NLW), Docket No. 126 (Bankr. D. N.J. June 7, 2004) (order entered June 7, 2004) ................................. 13

*In re Fryar,*
631 B.R. 457 (Bankr. E.D. Tenn. 2021) ................................ 12

*In re Gordon,*
BK-S-11-22221-LBR, 2013 Bankr. LEXIS 1087 (Bankr. D. Nev. March 20, 2013)............................................................. 11

*In re Lundell,*
223 F.3d 1035 (9th Cir. 2000)............................................. 11

*In re Magnolia Energy L.P.,*
No. 06-11069, Docket No. 196 (Bankr. D. Del. Feb. 12, 2007).......... 12

*In re Nordlicht,*
115 F.4th 90 (2d Cir. 2024).................................................. 1

*In re Olympic 1401 Elm Assocs. LLC,*
2016 WL 4530602 (Bankr. N.D. Tex. Aug. 29, 2016) .................... 12

*In re Owens,*
552 F.3d 958 (9th Cir. 2009)................................................. 1

*In re Pourteymour,*
No. 20-05522, Docket No. 346 (Bankr. SD. Cal. Dec. 16, 2021). passim

*In re Pourteymour,*
No. 20-05522-CL11, 2023 Bankr. LEXIS 997 (9th Cir. BAP Apr. 12, 2023) .................................................... 7, 9, 10

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...................................................... 2, 5

*Marsch v. Marsch (In re Marsch),*
    36 F.3d 825 (9th Cir. 1994) ...................................... 1

*Matter of Point Ctr. Fin., Inc.,*
    890 F.3d 1188 (9th Cir. 2018) .............................. 6

*Naartjie Custom Kids Inc.,*
    534 B.R. 416 (Bankr. D. Utah 2015) ................... 12

*Norwest Bank Worthington v. Ahlers,*
    485 U.S. 197 (1988) ............................................. 15

*Truck Insurance Exchange v. Kaiser Gypsum Company, Inc.,*
    602 U.S. 268 (2024) .............................................. 5

**STATUTES**

11 U.S.C. § 349(b)(3) ........................................ 14, 15

11 U.S.C. § 510(c) ................................................ 12

11 U.S.C. § 742 ..................................................... 14

11 U.S.C. § 1112(b) ................................................ 1

11 U.S.C. § 1141(b) ........................................ 14, 15

**OTHER AUTHORITIES**

Norman L. Pernick and G. David Dean, Structured Chapter 11
    Dismissals: A Viable and Growing Alternative after Asset
    Sales, 29 Am. Bankr. Inst. J. 1 (June 2010) ...................... 13

*Norton Bankr. L. & Prac.* 3d Dict. of Bankr. Terms § V15 .................... 14

*VEST*, Black's Law Dictionary (Bryan A. Garner ed., 10th ed.
    2014) ............................................................. 14

# I.     <u>STANDARD OF REVIEW</u>

Appellants agree that the Court reviews Article III standing de novo. Appellants also agree with the standard of review set out by Appellee on the question of "whether an appellant is a 'person aggrieved.'"  However, Appellants disagree with Appellees' assertion that the Court in this case should review the Bankruptcy Court's decision to dismiss a case under § 1112(b) for abuse of discretion (Opp. Br. at 2) (citing *In re Owens*, 552 F.3d 958, 960 (9th Cir. 2009)).

What the *Owens* court actually said is "[w]e review for abuse of discretion the bankruptcy court's decision under 11 U.S.C. § 1112(b) to dismiss a Chapter 11 case as a '*bad faith' filing*." *Owens*, 552 F.3d, at 960 [emphasis added].  *Owens* itself cited to *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir. 1994) which in turn stated: "We review de novo whether the cause for dismissal of a Chapter 11 case under 11 U.S.C. § 1112(b) is within the contemplation of that section of the Code. We review for abuse of discretion the bankruptcy court's decision to dismiss a case as a 'bad faith' filing." *Marsch,* 36 F.3d, at 828 [citation modified].

Here the question of whether the dismissal violated *Czyzewski v. Jevic Holdings Corp.,* 137 S. Ct. 973 (2017), is not a factual question but a legal one, and akin to the *Marsch* court's *de novo* analysis of whether a dismissal "is within the contemplation of that section of the Code." *Id; see also In re Nordlicht,* 115 F.4th 90, 104 (2d Cir. 2024) ("We review *de novo* the legal questions whether the

Settlement comported with *Jevic* and due process.").

## II.     <u>ARGUMENT</u>

**A.     <u>Appellants Have Standing to Appeal the Dismissal Order</u>**

**a)     Appellants Have Article III Standing**

To establish standing: (1) the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be "likely," rather than merely "speculative," that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *See also Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.),* 66 F.4th 1214, 1219 (9th Cir. 2023).

Appellees contend Appellants lack Article III standing because they did not suffer an "injury in fact" as a result of the Dismissal Order, asserting that Appellants "retain their prepetition rights against Debtor" and that, absent dismissal, "…Debtor would have been unable to make the Final Payment to Delphi, Delphi would have foreclosed on the Property – the Debtor's single asset – and the Appellant Claims would have been wiped out." (Opp. Br. at 20.)  This argument fails.

Appellees' assertion that foreclosure by Delphi was inevitable is unsupported by the record.  Appellants' Plan provided a viable path toward confirmation and completion of the RCC Project (56-57-ER-VII-2237–389.) Among other things, it

offered Delphi on account of its Class 1 Secured Claim $52.5 million (consisting of the $47.5 million that Delphi agreed to in the settlement with the Debtor, plus the $5 million extension payment) (56-ER-VII-2256 (Lns. 18-25)) *plus* $7,500,000 on account of Delphi's Unsecured Class 5 Claim (*Id.* at 2257 (Lns. 22-28)) — overall $7.5 million more than the $52.5 million the Debtor agreed to pay under the Delphi Settlement (Appellants' Br. at 13.)[1] Much the same way as the Debtor was able to engage in discussions with Delphi for a settlement at $47.5 million, it was not unrealistic to believe that Appellant's Plan[2] had an equally viable chance of persuading Delphi to accept *an additional $7.5 million more* than the Second Amended Debtor's Plan offered. Appellants' Plan also provided for a resolution of the disputed management question and a resolution of the Beavor guarantees[3], both of which issues are now the subject of ongoing litigation.  The Dismissal Order foreclosed the possibility of negotiation with Delphi and the potential for

---

[1] Appellants' Plan offered Class 4 general unsecured creditors ninety-five percent (95%) of their claims on the later of the Effective Date or the date the claim became Allowed (56-ER-VII-2257 (Lns. 16-19).) By contrast, the Second Amended Debtor's Plan proposed quarterly $500,000 installments beginning January 1, 2026, with 4% annual interest, until Class 4 claims were paid in full (32-ER-IV-1613 (Lns. 26-28).)

[2] Terms not defined herein shall have the meaning defined in Appellants' Opening Brief.

[3] As noted in Appellant's Opening Brief, on June 16, 2022, Mr. Beavor guaranteed the loans of Delphi to the Debtor pursuant to that certain Completion Guaranty; an Interest, Carry and Balancing Event Guarantee; and a Guaranty of Recourse Obligations (Appellants' Br. at 5) (citing 24-ER-III-1710 (Lns. 7-9).)

confirmation of the Appellants' Plan, constituting a concrete injury in fact.

*Jevic*, supports—rather than undermines—Appellants' standing. In *Jevic*, much like this case, Respondents argued:

> …that petitioners have not 'suffered an injury in fact,' or at least one 'likely to be redressed by a favorable judicial decision,' because petitioners would have gotten nothing even if the Bankruptcy Court had never approved the structured dismissal and will still get nothing if the structured dismissal is undone now... Thus, even if petitioners are right that the structured dismissal was impermissible, it cost them nothing. And a judicial decision in their favor will gain them nothing. No loss. No redress.
> *Id*., at 452, 463 [citation modified].

The Court rejected that argument. *Id*., at 452. *Jevic* emphasized that preclusion of litigating a potentially valuable claim itself is an injury in fact: "The lawsuit—like any lawsuit—might prove fruitless, *but the mere possibility of failure does not eliminate the value of the claim or petitioners' injury in being unable to bring it*." *Id*. at 463–64 [emphasis added]. The same reasoning applies here. Even if confirmation of Appellant's Plan was uncertain, the inability to prosecute a plausible plan offering materially better treatment to Delphi, better treatment to unsecured creditors, and contemplating resolution of the Beavor guarantee issues and management control issues of the Debtor, is itself a concrete injury. The Supreme Court in *Jevic* stated: "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Id*. at 464 [citation modified].

Appellees contend that Appellants lack standing because, in their view, the Dismissal Order is not a priority-skipping structured dismissal barred by *Jevic* (Opp.

Br. at 20.)  That argument is circular: whether the Dismissal Order violates *Jevic* is the central question on appeal, not a threshold barrier to standing.

Finally, these injuries are redressable.  Remand of the Dismissal Order with instructions as to the treatment of Appellants' Proofs of Claim, would restore Appellants' opportunity to address the treatment of its claims in connection with dismissal of the bankruptcy case.  Reversal would address not only the claims issues, but also the Beavor guarantee liability and the management control issues of the Debtor.  Because remand or reversal would eliminate identified injuries and restore lost opportunities, the redressability prong of *Lujan* is satisfied.

Appellee's argument is also soundly rejected by the more recent decision of the United States Supreme Court in *Truck Insurance Exchange v. Kaiser Gypsum Company, Inc.*, 602 U.S. 268 (2024). In *Kaiser Gypsum,* the question was whether certain insurers had standing to appeal confirmation of a chapter 11 plan which the bankruptcy court had adjudged as "insurance neutral." The Court stated that "Section 1109(b) permits any "party in interest" to "appear and be heard on any issue" in a Chapter 11 proceeding." *Kaiser Gypsum,* 602 U.S., at 277.

**b)  Appellants Can Prove Prudential "Person Aggrieved" Standing**

Appellees argue that Appellants cannot meet the "person aggrieved" standard because the Dismissal Order, in their view, gave the Debtor "a fighting chance at survival" and left Appellants with whatever state-law rights they held prepetition

(Opp. Br. at 22.) That argument is unavailing.

As detailed above, the Dismissal Order eliminated Appellants' ability to confirm their own plan which offered materially better treatment for both Delphi and other general unsecured creditors, and foreclosed ongoing negotiations with Delphi that could have produced a superior outcome for the Appellants and the estate. (Appellants' Br. at 16). It also imposed substantial contingent liability on Appellant Christopher Beavor under his personal guarantees, liability that would have been extinguished under the Appellants' Plan. In addition, by implicitly adopting the Dismissal Motion, the order approved the use of Madison refinance proceeds to pay Delphi and other unsecured creditors to the exclusion of Appellants. "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." *Matter of Point Ctr. Fin., Inc.*, 890 F.3d 1188, 1191 (9th Cir. 2018) (citing *In re P.R.T.C., Inc*., 177 F.3d 774, 777 (9th Cir. 1999)). Each of these harms has a direct and adverse pecuniary impact and fall squarely within the Ninth Circuit's "person aggrieved" standard.

## B. The Dismissal Order Violates *Jevic.*

### a) Payments to Other Favored Unsecured Creditors

Appellees contend that the Dismissal Order "did not order distributions to any creditors" and therefore did not favor certain unsecured creditors over Appellants

(Opp. Br. at 30.) This argument focuses on the implied semantics but not the actual content or context of the Dismissal Order. As detailed in Appellants' Opening Brief, the Dismissal Motion incorporated the Refinance Transaction and Exhibit B's schedule of targeted unsecured creditor payments, while omitting Appellants' claims entirely. By granting the Dismissal Motion in its entirety, the Bankruptcy Court necessarily approved the payment scheme described in the Dismissal Motion.

Appellees rely heavily on *In re Pourteymour*, No. 20-05522-CL11, 2023 Bankr. LEXIS 997 (9th Cir. BAP Apr. 12, 2023) (nonprecedential)[4], to suggest that the Dismissal Order here was equivalent to an unconditional "straight dismissal." (Opp. Br. at 27–28.) *Pourteymour* however only highlights the fallacy of Appellee's argument. In *Pourteymour* the Debtor proposed a structured dismissal that would either pay all arrears, administrative claims, and unsecured creditors other than the claims of the objecting creditor, alternatively, the debtor proposed to reserve the objecting creditor's pro-rata share pending resolution of a claim objection proceeding. The relevant dismissal order entered by the bankruptcy court in *Pourteymour* rejected the first alternative out of hand, ruling that this proposal would violate *Jevic*:

Without addressing its potential benefits, the court notes that the

---

[4] Although *Pourteymour* was designated as a nonprecedential memorandum under 9th Cir. BAP R. 8024-1(c)(2), Appellees urge this Panel to adopt its reasoning in their Opposition Brief (Opp. Br. at 9; FN 6.) Appellants agree that *Pourteymour*'s reasoning is instructive here.

Supreme Court's holding in *Jevic* prohibits this structured dismissal. There, the Court addressed whether a bankruptcy court may approve a structured dismissal that provides for distributions that do not follow ordinary priority rules without the affected creditors' consent. 137 S.Ct. at 983. It answered the question No. *Id.* Here, Debtor's proposal seeks to do just that. The Code's priority scheme requires a pro-rata distribution to all creditors of the same priority. *See* 11 U.S.C. §§ 507, 725, 726, 1129(b). But he seeks to exclude FFB's [the objecting creditor] unsecured claims from their equal entitlement. That is not allowed under the code and so is not permissible in a conditioned dismissal order under *Jevic*, 137 S.Ct. at 983. This alternative must therefore be rejected. (75-SER-2852.)

*See In re Pourteymour,* No. 20-05522, Docket No. 346 (Bankr. SD. Cal. Dec. 16, 2021) (the "*Pourteymour* Dismissal Order")[5] As to the second alternative, the bankruptcy court stated:

> Second, Debtor proposes an alternative structured dismissal. Under it he would use the $2.8 million to pay non-FFB unsecured creditors $2,533,056 and hold $296,944 in reserve to (possibly) pay FFB after the validity and amount of its claims are adjudicated in the state court… Debtor avers, the court can readily determine FFB's pro-rata share of the proposed $2.8 million distribution: $296,944…. FFB disagrees with Debtor's characterizations. It argues that all four of its proofs of claim have outstanding, unsecured balances… So, FFB argues, it cannot be approved under *Jevic* as violating the Bankruptcy Code's priority scheme…
>
> The court agrees with FFB. On the present record – because of the dispute – this second conditional dismissal is not permissible.
>
> These sums are vastly different. And without knowing the correct

---

[5] A copy of the *Pourteymour* Dismissal Order is included in Appellants' Supplemental Excerpts of Record ("SER"), filed concurrently herewith (75-SER-2844-58.)

figure, the court cannot approve this second proposal as it too contravenes the text and spirit of *Jevic* for the same reasons as the first. Namely, it would order a potentially unequal distribution to like-priority creditors not authorized by the Bankruptcy Code. Accordingly, it is rejected also. (75-SER-2853.)

The bankruptcy court in *Pourteymour* then entered a plain vanilla order with no linked transactions (*Id.*)

Given that record, it was not surprising that the Bankruptcy Appellate Panel upheld the dismissal order ruling that: "The Dismissal Order does not violate the holding of *Jevic* because it provides for a straight dismissal in accordance with § 349, and it neither expressly nor impliedly conditions dismissal on payments to creditors." *Pourteymour*, 2023 Bankr. LEXIS 997, at *16.

The opposite occurred here. As in *Pourteymour*, the Debtor proposed—through the Madison Refinance Transaction—to pay selected unsecured creditors while excluding Appellants. This mirrors the first structured-dismissal alternative advanced in *Pourteymour*, which the bankruptcy court there squarely rejected. Yet here, although the Dismissal Motion expressly provided that funds would be used to pay "allowed unsecured claims as set forth in Exhibit B to the LOI," and notwithstanding that Appellants' objected-to claims remained unresolved, the Bankruptcy Court approved the Dismissal Motion.

Appellee's argument that the Bankruptcy Court only "authorized" but did not "order" the Refinance Transaction is belied not only by the text of the order, but

also, as in the words of the *Pourteymour* bankruptcy court, the spirit of *Jevic.*

Specifically, the Dismissal Order here provides:

> "IT IS HEREBY ORDERED *that the Motion is granted* as the Court finds that cause exists to dismiss the case pursuant to 11 U.S.C. § 1112(b)…"

> 2.    The Debtor is *authorized and empowered to do and perform all acts necessary to implement the Refinance Transaction with Madison Capital* Group, LLC or its assignee as contemplated in the Motion.

> (68-ER-VIII-2753 (Lns. 13-21)) [emphasis added].

Undoubtedly the Dismissal Order approved implementation of the Refinance Transaction.  The fact that the Dismissal Order sought to ignore the effect of the complete implementation of the Refinance Transaction does not save the Dismissal Order from the proscriptions of *Jevic*.

Appellees also point to the Bankruptcy Court's oral ruling in an attempt to argue that the structured dismissal here does not violate the priority distribution scheme established in *Jevic* (Opp. Br. at 16.)  A similar argument was also made on appeal in *Pourteymour* in which the BAP directly rejects reliance on oral statements to reinterpret a written dismissal order: "To accept [petitioner's] argument, we would have to disregard the bankruptcy court's written order, which expressly provides for a straight dismissal, and instead review the court's oral comments as it evaluated the parties' arguments.  This would be exactly backwards: written decisions always supersede the court's oral comments." *Pourteymour*, 2023 Bankr. LEXIS 997, at

*16 [internal citations omitted].  Here, the written Dismissal Order granted the Motion in full — and therefore incorporated the payment provisions, regardless of the Bankruptcy Court's oral findings.

Appellees next argue that all of Appellants' claims "were not allowed claims" because the Debtor filed objections to them (Opp. Br. at 30.)[6]  Faced with identical issue, the bankruptcy court in *Pourteymour* rejected this exact argument ruling:

> These sums are vastly different. And without knowing the correct figure, the court cannot approve this second proposal as it too contravenes the text and spirit of *Jevic* for the same reasons as the first. Namely, it would order a potentially unequal distribution to like-priority creditors not authorized by the Bankruptcy Code. Accordingly, it is rejected also. (75-SER-2853.)

Here Appellants had filed Proofs of Claim Nos. 38–48 totaling over $141,000,000 (10-20-ER-III-718–1147.)  The validity and amounts of those claims were never adjudicated by the Bankruptcy Court.  The filing of an objection to a claim sets up a contested matter, and the filing of a claim objection does not, without a court ruling thereon, vitiate the claim. *See In re Lundell,* 223 F.3d 1035, 1039 (9th Cir. 2000)*; In re Gordon,* BK-S-11-22221-LBR, 2013 Bankr. LEXIS 1087, at *3 (Bankr. D. Nev. March 20, 2013) ("The Advisory Committee Notes to Rules 9014

---

[6] Appellees are correct that Appellants inadvertently misstated the record by asserting that the Debtor did not file any objections to the claims of CAI Investments, LLC or Silver State Realty Investments (Appellants' Br. at 28); (Opp. Br. at 30; FN. 8.)  These objections are however included in Appellants' Excerpts of Record [65-66-ER-VIII-2554-2730.]

and 3007 make it clear that the filing of a claim objection initiates a contested matter…").

Appellees also make the conclusory assertion that even if Appellants' claims were allowed, they "would have been equitably subordinated to the level of equity due to inequitable conduct by Beaver [*sic*] and Bristlecone."  (Opp. Br. at 30). However, equitable subordination, like claim allowance, requires an evidentiary showing and a court order—neither of which occurred here. 11 U.S.C. § 510(c).  No court has made any finding of inequitable conduct warranting subordination of Appellants' claims.

Where courts have permitted structured dismissals, they have done so in the context of consensual settlements (which is not present in this case) or with a claim-resolution processes that afforded non-consenting parties the opportunity to object to proposed distributions and either adhered to the priority scheme or obtained consent to deviate from it (also not present in this case). See, e.g., *In re Fryar*, 631 B.R. 457 (Bankr. E.D. Tenn. 2021); *In re Magnolia Energy L.P.,* No. 06-11069, Docket No. 196 (Bankr. D. Del. Feb. 12, 2007) (structured dismissal order reserving funds and establishing a claim-resolution process prior to payment) (62-ER-VII-2474 (Lns. 1-7)); *Naartjie Custom Kids Inc.,* 534 B.R. 416 (Bankr. D. Utah 2015); *In re Olympic 1401 Elm Assocs. LLC*, 2016 WL 4530602 (Bankr. N.D. Tex. Aug. 29, 2016) (permitting a structured dismissal after the debtor completed a § 363 sale

of substantially all assets, which generated sufficient proceeds to pay all non-insider claims in full, with insider claims, **by consent**, to be paid *pro rata* from the remaining funds) [emphasis added].

In fact, commentators have noted that "most structured dismissal orders contain some type of claims-reconciliation process." *See* Norman L. Pernick and G. David Dean, Structured Chapter 11 Dismissals: A Viable and Growing Alternative after Asset Sales, 29 Am. Bankr. Inst. J. 1 (June 2010) (citing *In re Wickes Holdings LLC*, Case No. 08-10212 (KJC) (Bankr. D. Del. 2008) [Dkt. No. 1346] (order entered Mar. 23, 2009); *In re Blades Board & Skate LLC*, Case No. 03-48818 (NLW), Docket No. 126 (Bankr. D. N.J. June 7, 2004) (order entered June 7, 2004).

Here, the Dismissal Order contained no such claim resolution process.

**b)** **The Dismissal Order Favored Equity Over Creditors.**

The Dismissal Order needs to be viewed in the context of the events leading up to it: the dueling plans of reorganization between Appellants and Appellee; the significant claims filed by Appellants none of which had been adjudicated by the bankruptcy court; and the settlement with Delphi which shifted liability to Appellants.

Throughout the pendency of the Bankruptcy Case, Appellants argued that the Bankruptcy Case was being prosecuted for the benefit of the Gryphon Members, so as to ensure above all else that they did not forfeit their equity interests and incur the

tax penalty that arises on an early termination of an opportunity zone project. (Appellants' Br. at 24.)

Appellees waive this argument off with the claim that there were no distributions to equity on account of the Dismissal Order. The fact that no funds were actually distributed to the Gryphon Members on account of their equity does not mean they did not receive value as a result of the Dismissal Order. Bankruptcy Code Section 349(b) provides in part:

> Unless the court, for cause, orders otherwise, a dismissal of a case — (3) *revests* the property of the estate in the entity in which such property was *vested* immediately before the commencement of the case under this title. [emphasis added]

As noted in *Norton Bankr. L. & Prac*. 3d Dict. of Bankr. Terms § V15, the terms "vest" and "revest" are not defined in the Code but are used in Bankruptcy Code § 349(b)(3) to provide what happens to property of the estate upon dismissal of the case other than under Code § 742. 11 U.S.C. § 349(b)(3). The term "vest" is also used in Code § 1141(b) to provide that confirmation of a plan vests all property of the estate in the debtor. 11 U.S.C. § 1141(b). To "vest" means "'[t]o confer ownership (of property) on a person'; '[t]o invest (a person) with the full title to property'; or '[t]o give (a person) an immediate, fixed right of present or future enjoyment.'" *VEST*, Black's Law Dictionary (Bryan A. Garner ed., 10th ed. 2014).

The use of the same word "vest" to describe the effect of confirmation of a plan and the effect of dismissal, is significant. It reflects that, whether through plan

confirmation or case dismissal, "vesting" confers ownership rights. In a Chapter 11 case, if creditors are not paid and equity holders are "vested" with their interests, the absolute priority rule is violated. *Bank of America Nat'l Trust & Sav. Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 441-42 (1999); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988). Just as a Chapter 11 plan cannot lawfully vest equity holders with their interests under Bankruptcy Code § 1141(b) before creditors (in this case, Appellants) are paid, a dismissal cannot lawfully vest equity holders with their interests under Code § 349(b)(3) ahead of creditors (Appellants). Yet that is precisely what occurred here, and *Jevic* makes plain, a dismissal—like any other outcome of a bankruptcy case—cannot be used as a vehicle to circumvent the Code's priority scheme. *Jevic*, 580 U.S., at 455.

## III.    CONCLUSION

The Dismissal Order, through its explicit granting of the Dismissal Motion, amounts to (i) a structured dismissal that (ii) selectively pays certain general unsecured creditors over others without their consent; and (iii) revests the equity interests without the payment of the senior claims of creditors.  It thus violates the Bankruptcy Code's priority scheme and the Supreme Court's precedent in *Jevic*.

The Dismissal Order should therefore either be reversed, or the Bankruptcy Appellate Panel should remand the Dismissal Order to the Bankruptcy Court with instructions to modify the Dismissal Order to be consistent with *Jevic*.

DATED: August 29, 2025             GREENBERG GLUSKER FIELDS
                                   CLAMAN & MACHTINGER LLP
                                   2049 Century Park East, Suite 2600
                                   Los Angeles, CA 90067


                                   By: */s/ Brian L. Davidoff*
                                       BRIAN L. DAVIDOFF
                                       COLE F. NICHOLAS
                                       Attorneys for Appellants
                                       CHRISTOPHER BEAVOR, ET AL.

## CERTIFICATE OF COMPLIANCE
### Pursuant to Fed. R. Bankr. P. 8015(h)

Pursuant to Fed. R. Bankr. P. 8015(h), I certify that the accompanying *Appellants' Reply to Brief of Appellee Reno City Center Owner, LLC* is proportionately spaced, has a typeface of 14 points and contains 3,542 words, not including permitted exclusions under Fed. R. Bankr. P. 8015(g).

DATED: August 29, 2025

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, CA 90067

By: */s/ Brian L. Davidoff*
  BRIAN L. DAVIDOFF
  COLE F. NICHOLAS
  Attorneys for Appellants
  CHRISTOPHER BEAVOR, ET AL.

# CERTIFICATE OF SERVICE

I am a resident of the state of California, over the age of eighteen years old, and not a party to the within action. My business address is Greenberg Glusker Fields Claman & Machtinger LLP 2049 Century Park East, Ste. 2600 Los Angeles, CA 90067.

I hereby certify that on August 29, 2025, I electronically filed the *Appellants' Reply to Brief of Appellee Reno City Center Owner, LLC* with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Ethan Birnberg
Porter Simon, PC
40200 Truckee Airport Road
Truckee, CA 96161
Email: birnberg@portersimon.com

Elizabeth Fletcher
Fletcher & Lee Ltd.
448 Ridge Street
Reno, NV 89501
Email: efletcher@fletcherlawgroup.com

Stephen R. Harris
HARRIS LAW PRACTICE LLC
Suite F
850 E. Patriot Blvd.
Reno, NV 89511
Email: steve@harrislawreno.com

Timothy A. Lukas
HOLLAND & HART LLP
2nd Floor
5470 Kietzke Lane
Suite 100
Reno, NV 89511
Email: tlukas@hollandhart.com

Edward Michael McDonald Jr.
United States Department of Justice
Office of the United States Trustee
Suite 4300
300 Las Vegas Blvd. South
Las Vegas, NV 89101
Email: edward.m.mcdonald@usdoj.gov

Joseph Went
HOLLAND & HART LLP
Second Floor
5470 Kietzke Lane
Suite 100
Reno, NV 89511
Email: jgwent@hollandhart.com

I certify that I have served the following document by U.S. Mail to the following non-CM/ECF Participants

Norma Guariglia
HARRIS LAW PRACTICE LLC
850 E. Patriot Blvd.
Reno, NV 89511

I declare that I am employed in the office of a member of the bar of this court at whose direction the electronic filing and service was made.

August 29, 2025                    */s/ Julie King*
                                   Julie King